IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CINDY CONLEY and TRACEE BURCHELL, | CV-14-86-BLG-SPW-CSO |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |
| STOCKMAN BANK, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiffs Cindy Conley ("Conley") and Tracee Burchell

("Burchell") filed a complaint alleging the following two counts against

Defendant Stockman Bank ("Stockman Bank"):

> Count I – Violations of Title VII of the Civil Rights Act of 1964 for discrimination based on sex, and for retaliation, and
> Count II – Violations of the Montana Human Rights Act, Title 49, MCA, for discrimination based on sex and for retaliation.

Now pending is Stockman Bank's motion to dismiss under Rule

12(b)(6). *Defts' Mtn. to Dismiss (ECF 4)*.[1]

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

## II. <u>BACKGROUND</u>

In addressing this Rule 12(b)(6) motion, the Court must accept the Complaint's fact allegations as true and must construe the pleadings in the light most favorable to the Plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, the following allegations are assumed to be true for purposes of addressing the pending motion to dismiss.

Conley and Burchell are former Stockman Bank employees. *Cmplt. (ECF 1) at ¶ 6.* They allege that during their employment, they "were subjected to a pattern of unwelcome, inappropriate, and offensive conduct of a sexual nature . . . ." *Id. at ¶ 7.* At pages 3 through 13 of their Complaint, they recite examples of instances they contend created a hostile work environment, but additionally allege that the offensive conduct was not limited to these instances. *Id. at ¶ 7a–7bb.* They summarize these contentions by alleging that both Plaintiffs were subjected to a pattern of ongoing and persistent harassment, and that the workplace was permeated with severe and pervasive discrimination that was both objectively and subjectively hostile. *Id. at ¶ 8.* At an

unspecified time, both Conley and Burchell were "forced to resign" from their employment with Stockman Bank. *Id.* at ¶ 7(bb). The specific instances alleged by each Plaintiff are as follows.

## A. Conley's Allegations

Stan Markuson ("Markuson"), the branch president of Stockman Bank,

> [M]ade inappropriate sexual comments and jokes to Ms. Conley for many years. One particular instance is when he stood in the doorway of her office, trapping her in her office, and told Ms. Conley in a creepy, flirtatious manner that he would like to see her in a bikini on the beach in Jamaica, where he had just vacationed with his wife and two children.

*Id.* at ¶ 7(a). Conley was "repeatedly told by other bank personnel, '[t]hat's just how Stan is' and that she would have to get used to it." *Id.* at ¶ 7(b).

In May 2013, Conley was present at a Compliance Department meeting held at a local restaurant. Jeff Flaten ("Flaten"), the Vice President Compliance Director (*id.* at ¶ 7(d)), attended the meeting and "talked about his excessive alcohol drinking habits, repeatedly gawked at the young female waitress throughout their meal, and made sure to get the waitress' name off the ticket when he paid." *Id.* at ¶ 7(h).

Conley and Burchell were present at a Compliance Department meeting held on June 4, 2013. *Id.* at ¶ 7(k). While celebrating the birthday of Burchell's supervisor, Tami Harwood ("Harwood"), "Mr. Flaten was completely fixated on Ms. Harwood and asked her in a sexually suggestive way if they should all stand in line to spank her or if they all got to spank her at once." *Id.* After she responded that there would be no spanking, Flaten said, "[o]h, the spanking will come this weekend." *Id.* Also during the meeting, Flaten discussed "Reg Double D," and said that it was his favorite regulation "[w]hile fixating on Ms. Conley's breasts." *Id.* at ¶ 7(l). He "motioned his upper body towards Ms. Conley" and said "it was easy for him to remember that regulation because its name is 'Double D.'" *Id.* Mr. Flaten then proceeded to tell a "crude 'blonde joke' directed at Ms. Conley." *Id.* at ¶ 7(m).

On July 1, 2013, "Mr. Flaten stood and lingered at Ms. Conley's office door, staring eerily at Cindy for an uncomfortable period of time, making her feel trapped and isolated in her office." *Id.* at ¶ 7(r).

## B. **Burchell's Allegations**

The Complaint alleges two incidents involving Burchell directly, two incidents that occurred in her presence but involved other employees, and one incident that involved the unnamed waitress at the Compliance Department meeting discussed above.

The first incident occurred on December 22, 2011. *Id.* at ¶ 7(c). Burchell asked Markuson if he knew that customers could see the main vault from the walk-up window. Markuson "grew enraged, stepped forward and got in Ms. Burchell's face with his finger pointing at and almost touching her face, towering over and physically intimidating her, and told her she better think very carefully about what she says next." *Id.* The second incident began the next morning when Markuson called Burchell into Harwood's office and again began "yelling at and physically intimidating" Burchell over the teller incident. *Id.* Burchell reported the incident to the head of the human resources department. *Id.*

Burchell was also present at the Compliance Department meeting in May 2013, where Flaten gawked at a waitress and got her name off the "ticket." *Id.* at ¶ 7(h).

On July 2, 2013, Burchell overheard Flaten telling a joke to his assistant "about 'gay men' and 'poop.'" The joke was told loud enough for those in the vicinity to hear. *Id.* at ¶ 7(s). Finally, at the previously-discussed Compliance Department meeting held on June 4, 2013, Burchell was present for the various comments directed towards Conley and Harwood. *Id.* at ¶ 7(k)–(m).

**C. Work Environment Allegations**

The other alleged incidents did not occur directly to, or in the presence of, either Conley or Burchell. Rather, the alleged incidents involved other people in and out of the workplace. Three incidents allegedly occurred at local bars and involved Harwood and Flaten. Burchell and Conley learned of the incidents at a later time from Harwood. Four incidents occurred at work to other employees but Conley and Burchell heard about them later.

First, on December 10, 2012, Harwood (Burchell's supervisor) told Burchell that, while Harwood was at a local bar, Flaten made "extremely derogatory comments about Ms. Burchell, including that Ms. Burchell was 'bitchy' and asked how old Ms. Burchell was." *Id.* at ¶ 7(d). Harwood also told Burchell that Flaten "said other hurtful things about Ms. Burchell that she would not repeat because they would hurt Ms. Burchell's feelings even more." *Id.* When Burchell asked if Harwood would report the incident, Harwood responded, "You're not supposed to know. He told me not to say anything, so don't say anything." *Id.* Harwood relayed the same incident to Conley in April 2013. *Id.* at ¶ 7(e). When Conley asked about whether she would report the incident, Harwood said, "Why go to HR, they won't do anything. We would just lose our jobs." *Id.*

The second incident outside of work also occurred at a local bar and was relayed to Conley and Burchell in April 2013. *Id.* at ¶ 7(g). Harwood told the Conley and Burchell that while she was attending her sister's bachelorette party, Flaten "told the group that Ms. Harwood worked for him and that she was the 'naughty' one in the

office, in a sexually suggestive way." *Id.* He later "stroked the side of her face with his hand in a sexually suggestive way." *Id.*

Harwood relayed the third incident occurring at a bar to Conley and Burchell in May 2013. *Id.* at ¶ 7(i). She told them that Flaten asked her and her friends to "come home with him to party at his house after the bars." *Id.*

The final four incidents allegedly occurring at work are as follows: (1) Conley was informed that Flaten "gawked at and fixated on a female employee from another department" (*id.* at ¶ 7(o)); (2) Conley and Burchell were told Flaten winked at Harwood as he walked by her office on July 1, 2013 (*id.* at ¶ 7(p)); (3) Flaten announced to some employees that, "It's so hot I'm going to take my shirt off" and, "I hope no one around here minds my big belly and deep navel" (*id.* at ¶ 7(q)); and (4) Harwood told Burchell and Conley on July 3, 2013, that Flaten said an email from another employee was "bitchy" and he asked, "'Is she on her period?' He continued, 'Or maybe she is too old to have her period.'" *Id.* at ¶ 7(t).

## D. **Retaliation Allegations**

Burchell alleges that, after she reported sexual harassment to the human resources department, she "was forced to relocate to a lesser position at a new branch in Billings, Montana," (*id.* at ¶ 12). Additionally, Stockman Bank's CEO responded to Burchell's request for the bank to pay some of her relocation costs in a letter that "essentially blamed Ms. Burchell for choosing to move to Billings herself." *Id.* at ¶ 7(aa).

Conley alleges that Stockman Bank's solution to her reported harassment was to have her report directly to Ms. Gray, Mr. Flaten's assistant, so that Ms. Conley would not have to report directly to Mr. Flaten," but he remained in the same department and office, located directly across the hall from Ms. Conley's office. *Id.* at ¶ 7(y).

## III. **PARTIES' ARGUMENTS**

Stockman Bank presents five arguments for dismissal of the Complaint for failure to state a claim under Rule 12(b)(6).

First, Stockman Bank argues that the Conley and Burchell cannot rely on rumor or hearsay to establish a hostile workplace, but must

instead show that they "were subjected to verbal or physical conduct of a sexual nature." *Defts' Br. in Support of Mtn. to Dismiss (ECF 5) at 10–11.*

Second, Stockman Bank argues that the conduct alleged in the Complaint is not sufficiently severe or pervasive to establish a hostile workplace. *Id.* at 12. Stockman Bank argues that because neither Conley nor Burchell were physically touched or threatened, and Burchell does not allege any conduct of a sexual nature directed at her, the allegations are neither severe enough nor frequent enough to be actionable. *Id.* at 14–15.

Third, Stockman Bank contends that it is relieved of liability because it took prompt remedial action. *Id.* at 15. Additionally, it argues that the remedy must simply be reasonably calculated to end the harassment, not that it must be the remedy suggested by the complaining employees. *Id.* at 15–16.

Fourth, Stockman Bank argues that the allegations against Markuson fail to state a claim because: (1) he is not a supervisor of either Conley or Burchell; (2) his conduct is not alleged to have affected

Burchell's work; and (3) the incident involving Burchell was not reported to the Montana Human Rights Bureau until almost two years after it occurred. *Id.* at 16–17. Respecting this last argument, Stockman Bank maintains that by not following the exclusive remedy provisions of the Montana Human Rights Act, Burchell waived her right to recover any potential damages. *Id.* at 17. Stockman Bank also argues that Conley fails to allege that the remarks Markuson made to her altered her working conditions or unreasonably interfered with her work. *Id.* at 17.

Finally, Stockman Bank maintains that the allegations of retaliation should not be considered because they are conclusory. *Id.* at 19. Additionally, the Complaint does not allege a discriminatory or retaliatory motive on the part of Stockman Bank, but it only infers that Conley and Burchell wanted Flaten removed from his position. *Id.* at 19–20.

## IV. <u>LEGAL STANDARD</u>

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient

facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710

F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp.*

*Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). Although the Court

accepts all fact allegations as true, the Court is not required to accept

as true allegations that are merely conclusory, unwarranted deductions

of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*,

629 F.3d 992, 998 (9th Cir. 2010).

The Court's standard of review under Rule 12(b)(6) is informed by

Rule 8(a)(2), which requires that a pleading contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P

8(a)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has

facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* A plausibility determination is context

specific, and courts must draw on judicial experience and common

sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 2014 WL 4290615,

10 (9th Cir. 2014). In *Levitt*, the Ninth Circuit summarized the test:

> First, to be entitled to the presumption of truth, allegations in a
> complaint or counterclaim may not simply recite the elements of a
> cause of action, but must contain sufficient allegations of
> underlying facts to give fair notice and to enable the opposing
> party to defend itself effectively. Second, the factual allegations
> that are taken as true must plausibly suggest an entitlement to
> relief, such that it is not unfair to require the opposing party to be
> subjected to the expense of discovery and continued litigation.

*Levitt,* 2014 WL at *10.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme

Court held that a plaintiff in a Title VII case need not establish a prima

facie case in her complaint. There is no heightened pleading standard

in such cases and "the ordinary rules for assessing the sufficiency of a

complaint apply." *Id. at 511.* The "complaint must allege sufficient

facts to state the elements of a hostile work environment claim."

*Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th

Cir. 2008).

When a Rule 12(b)(6) motion is granted, leave to amend should be

granted unless doing so would be futile. *See, e.g., Lopez v. Smith,* 203

F.3d 1122, 1127 (9th Cir. 2000).

# V. **DISCUSSION**

## A. **Sexual Harassment—Hostile Work Environment**

To state a hostile work environment claim under either Montana and Federal Law, a plaintiff must allege that:

> (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)); *see Beaver v. Mont. Dept. of Nat. Resources and Conservation*, 78 P.3d 857, 863–864 (Mont. 2003).

### 1. **Conley's Hostile Work Environment Claim**

As noted, the Complaint alleges that Conley was subjected to "inappropriate sexual comments and jokes" for many years. *ECF 1*, at ¶ 7(a). Specifically, Conley alleges not only that she was subjected to these sexual comments and jokes, but further alleges they were frequent in nature for many years. She gives examples of these comments and jokes from Markuson, citing his comment about wanting

to see her in a bikini in Jamaica (*id.* at ¶ 7(a)). She also cites actions from Flaten, including a blonde joke directed at her during a meeting (*id.* at ¶ 7(m)), and Flaten gesturing to her chest in regards to "reg double d" (*id.* at ¶ 7(l)). To state a claim, she need not provide every single joke or comment in order to survive a motion under Rule 12(b)(6), because "detailed factual allegations" are not required as long as the factual allegations provided "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court concludes that Conley's allegations rise to the level necessary for a plausible claim. *See Ellison*, 924 F.2d at 878.

Stockman Bank argues that the actions of Markuson should not be considered because they were not timely reported to the Montana Human Rights Bureau. This argument is unpersuasive. The Montana Supreme Court has stated that:

> It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Benjamin v. Anderson*, 112 P.3d 1039, 1047 (Mont. 2005) (quoting *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

While "simple teasing" and "offhand comments" do not generally constitute an adequate showing under the third element for a hostile workplace, *Faragher,* 524 U.S. at 788, the extended frequency alleged by Conley states a plausible claim for discrimination.

## 2. Burchell's Hostile Work Environment Claim

Burchell's specific allegations are fewer than Conley's. As noted above, although Burchell makes conclusory allegations about being subjected to a pattern of severe, ongoing, offensive and pervasive conduct of a sexual nature, she does not allege any specific instances of verbal or physical sexual conduct directed at her. She does allege, however, that she was present for and knew about conduct directed at others in the workplace on three occasions. The Court concludes that, although it is a closer question that with respect to Conley's discrimination claim, Burchell has, at this stage of the proceedings, alleged enough to state a plausible claim. In *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2006), the Ninth

Circuit held that if hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff. *Id.* (*citing McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1117-18 (9th Cir. 2004)). *See also Harris v. Forklift sys.*, Inc., 510 U.S. 17, 21 (1993).

Burchell alleges that she overheard the comments made at the meeting on June 4, 2014, regarding spanking Harwood for her birthday, "reg double d" in reference to Conley's chest, and a blonde joke directed at Conley. Burchell overheard a joke about gay men and poop, and watched Flaten "gawk" at a waitress and get her name off of the "ticket" at a meeting. Although these incidents, for a variety of reasons, may not be enough to prove discrimination in the workplace, Burchell need not prove her allegations at this stage of the proceedings. The issue in a motion to dismiss "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema,* 534 U.S. at 511 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## B. <u>Retaliation</u>

To state a claim of retaliation, a plaintiff must allege, "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Additionally, "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Id.*

### 1. <u>Burchell's Retaliation Claim</u>

Looking first to Burchell's claims of retaliation, she alleges that she "was forced to accept a lesser position at a different branch in Billings, to try to escape harassment." *ECF 1* at ¶ 7(y). Thus, Burchell clearly alleges that she took part in a protected activity by reporting harassment to the human resources department (*id.* at ¶ 7(x)), and that as a result she suffered an adverse action because she was "forced to accept a lesser position." *Id.* at ¶ 7(y). Even if a hostile workplace discrimination claim fails, Title VII allows employees to freely report actions that they reasonably believe are discriminatory, even if those

actions are in fact lawful. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). When adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. *Id.* at 507. Thus, Burchell has stated a claim for retaliation and Stockman Bank's motion should be denied to the extent it seeks dismissal of this claim.

## 2. Conley's Retaliation Claim

The Court further concludes, however, that Conley has failed to state a plausible claim of retaliation. Nowhere in the Complaint does she allege that Stockman Bank took any adverse employment action as a result of her reports to the Human Resources Department. She pleads only conclusory statements of retaliation. Though the Complaint alleges that the "Defendant has retaliated against Plaintiffs" (*id.* at ¶¶ 16, 19), there are no further facts from which to draw an inference of an adverse action toward Conley. As a general rule "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d

668, 688 (9th Cir. 2008). Thus, it would be improper to consider the additional facts contained in the Plaintiff's response brief. *ECF 7*.

Conley alleges only that, after she engaged in a protected activity, Stockman Bank had her "report directly to Ms. Gray, Mr. Flaten's assistant so that Ms. Conley would not have to report directly to Mr. Flaten." *ECF 1*, at ¶ 7(y). She does not allege that this was an adverse employment action. Otherwise, her contentions in this regard relate only to her unhappiness that Stockman Bank "failed to properly punish Mr. Flaten." *Id.* at ¶ 7(z). As a result, the Complaint fails to state a claim of retaliation as to Conley.

Finally, Stockman Bank argues the actions taken in response to Conley and Burchell's report to human resources should relieve it of liability. But Stockman Bank has the obligation to plead and prove this as an affirmative defense, so it is not properly considered in connection with the pending motion to dismiss. *See Faragher v. City of Boca Raton*, 524 U.S. 775 at 807. *See also, Tofsrud v. Potter*, 490 Fed.Appx. 857, 859 (9th Cir. 2012) (granting summary judgment to employer who had "carried its burden on the affirmative defense").

## VI. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion to dismiss (*ECF 4*) be GRANTED, with leave to amend, to the extent it seeks dismissal of Conley's retaliation claims in Counts I and II, but DENIED in all other respects.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 14th day of October, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge